IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER MEYER, SARAH MEYER, and THE NATIONAL FEDERATION OF THE BLIND, INC., | |
| Plaintiffs, | Case No. 1:19-cv-3311 |
| v. | |
| JENNIFER WALTHALL, in her official capacity as Secretary of the Indiana Family and Social Services Administration, and ADRIENNE SHIELDS, in her official capacity as Director of the Indiana Division of Family Resources, | COMPLAINT |
| Defendants. | |

## INTRODUCTION

1. Plaintiffs Christopher Meyer, Sarah Meyer, and the National Federation of the Blind, Inc. ("NFB") bring this action against Jennifer Walthall, in her official capacity as Secretary of the Indiana Family and Social Services Administration ("FSSA"), and Adrienne Shields, in her official capacity as Director of the Indiana Division of Family Resources ("DFR"), to end systemic violations of the civil rights of blind Indiana residents by requiring Defendants to provide blind persons equally effective access to all print and website communications created or distributed by Defendants and their contractors concerning government benefits, including health care coverage and food assistance benefits, as required by Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12134, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794.

2. For semantic convenience throughout this complaint, the term "blind" is used in the broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access hard-copy standard print.

3. The State of Indiana, through its agencies FSSA and DFR, and their contractors, provides government benefits such as health care coverage, food assistance, and cash assistance to thousands of its residents in need. As of December 2018, more than 424,000 Indiana residents were enrolled in the Healthy Indiana Plan ("HIP"), one of the State's health insurance programs through which it provides Medicaid and, at that same time, the State had issued nearly $69 million dollars in benefits through the Supplemental Nutrition Assistance Program ("SNAP"). This action arises from the systemic failure of Defendants and their contractors to provide blind individuals with equally effective access to their program-related communications, including but not limited to, those regarding the application, eligibility, receipt, and administration of HIP, SNAP, and other life-sustaining government benefits. Defendants and their contractors provide such communications in standard print and on their websites, both of which are inaccessible to blind individuals. By offering only inaccessible communications, Defendants and their contractors prevent blind Indiana residents from participating equally in Indiana's state-administered benefits services, programs, and activities.

4. When blind recipients of government benefits have requested print communications in alternative formats such as Braille, Defendants have failed to provide them, instead directing blind individuals to rely on assistance from sighted third parties. This ineffective communication with blind individuals compromises their ability to privately, independently, and securely access information concerning their government benefits, as well as apply for, renew, or modify benefits, among other things. Blind Indiana residents are thus at a greater risk of failing to obtain or maintain

enrollment in benefits programs, causing lapses in necessary health care coverage, food, and cash assistance.

5. Title II of the ADA and Section 504 require Defendants to communicate in an equally effective manner with blind individuals. Defendants must provide auxiliary aids and services and make the modifications necessary to ensure that blind individuals have an equal opportunity to participate in and enjoy the benefits of their programs and services.  Appropriate auxiliary aids and services for blind individuals may include providing documents in alternative formats, such as Braille, audio CD, and digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, email, or other requested media.  More than four decades after the enactment of Section 504 and two decades after the enactment of the ADA, Defendants, directly and through their contractors, have failed to and continue to fail to communicate effectively with blind individuals.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4).

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims have occurred in this District and Defendant maintains several offices and operates in the District.

## PARTIES

8. Plaintiff Christopher Meyer is blind and uses Braille and accessible electronic formats to make and receive written communications. He uses screen access software, such as Job Access With Speech ("JAWS"), which transmits textual information presented visually on a computer, tablet, or smartphone screen into an audio output or refreshable Braille display. Mr.

3

Meyer receives assistance from the State of Indiana through several government benefits programs, including Medicaid, through HIP, and SNAP. Mr. Meyer resides in Indianapolis, Indiana, and is a member of the NFB.

9. Plaintiff Sarah Meyer is blind and uses Braille and accessible electronic formats to make and receive written communications. Ms. Meyer also uses screen access software such as JAWS. Ms. Meyer is a Medicaid recipient. She resides in Indianapolis, Indiana and is a member of the NFB.

10. The National Federation of the Blind ("NFB"), the oldest and largest national organization of blind persons, is a non-profit corporation duly organized under the laws of the District of Columbia with its principal place of business in Baltimore, Maryland. It has affiliates in all 50 states, Washington, D.C. and Puerto Rico. The vast majority of its approximately 50,000 members are blind persons who are recognized as a protected class under federal laws. The NFB is widely recognized by the public, Congress, executive agencies of government, and the courts as a collective and representative voice on behalf of blind Americans and their families. The NFB promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, health care, employment, family and community life, transportation, and recreation. The NFB has many members, including Plaintiffs Christopher Meyer and Sarah Meyer, as well as Kaiti Shelton, who reside in Indiana and rely on the FSSA and DFR for benefits and seek to access their benefits information on a private and equal basis. NFB sues on behalf of its members throughout Indiana.

11. The NFB also sues on its own behalf. The ultimate purpose of the NFB is the complete integration of the blind into society on a basis of equality. This objective includes the

removal of legal, economic, and social discrimination.  As part of its mission, and to achieve these goals, the NFB has worked actively to ensure that the blind have an equal opportunity to access information related to their health care by working with the Centers for Medicare and Medicaid to ensure provision of accessible communications to blind Medicare applicants, recipients, and beneficiaries, and by partnering with private companies to provide accessible health-related technology to the blind.  The NFB brings this suit in furtherance of its extensive efforts and expenditure of resources in promoting two of its principal missions: independence of the blind and equal access to government services and information for the blind.

12. Defendant Jennifer Walthall is the Secretary of the Indiana Family and Social Services Administration.  FSSA administers Indiana's health care and social services programs.  FSSA's mission is to compassionately serve Hoosiers of all ages and connect them with social services, health care, and their communities.  FSSA receives federal financial assistance to administer federal government benefits programs, such as SNAP, Medicaid, and Temporary Assistance for Needy Families ("TANF"), which provide individuals with food assistance, health coverage, and cash assistance, respectively.  FSSA is comprised of six divisions including: Family Resources, Medicaid Policy and Planning, Disability and Rehabilitative Services, Mental Health and Addiction, Aging, and Early Childhood and Out-of-School Learning.  Secretary Walthall is responsible for oversight of FSSA and its six divisions, including DFR.  The Office of the Secretary is also tasked with improving its system through technology and training, including ensuring an efficient provider payment system and improving service to families.  Director Walthall is sued in her official capacity as the official charged with performing the statutory and regulatory duties of FSSA, and with supervisory responsibility over FSSA and its divisions, agents, employees, representatives, and contractors.

13. Defendant Adrienne Shields is the Director of the Indiana Division of Family Resources. DFR is the division of FSSA tasked with establishing eligibility for Medicaid, SNAP, and TANF benefits. The division also manages the timely and accurate delivery of SNAP and TANF benefits. DFR receives federal financial assistance. Director Shields is sued in her official capacity as the official charged with performing the statutory and regulatory duties of DFR, and with supervisory responsibility over DFR and its agents, employees, representatives, and contractors.

## FACTUAL ALLEGATIONS

### Plaintiff Christopher Meyer

14. Mr. Meyer is a blind resident of Indianapolis, Indiana. He receives Medicaid health care coverage through HIP. He also receives food assistance through SNAP.

15. Defendants, and their contractor health insurance plans, send correspondence such as notices and letters to HIP and SNAP participants exclusively through standard print communications. Defendants also communicate with benefits recipients through their websites, including the FSSA Benefits Portal.

16. Since 2016, Mr. Meyer has attempted to obtain from FSSA and DFR Braille rather than standard print communications. To date, all such efforts have failed as representatives of FSSA and DFR have told Mr. Meyer that they cannot provide any communications in Braille.

17. Despite Mr. Meyer first requesting Braille communications in 2016, DFR mailed Mr. Meyer a standard print letter in or around September 2017 stating that he needed to submit additional information to DFR to remain enrolled in Medicaid. Because Mr. Meyer is blind, he could not independently review this letter. Engrossed in his collegiate studies at the time, it was difficult for Mr. Meyer to schedule a sighted assistant help him review his mail. Therefore, he

missed this critical notification from DFR. He only later learned that he had been disenrolled from Medicaid.

18. In March 2018, Mr. Meyer attempted to reapply for Medicaid using FSSA's online benefits portal. Although Mr. Meyer regularly navigates through accessible websites using JAWS, he could not complete the online application because of access barriers on the website. Because several form fields, such as checkboxes and dropdown menus, were not properly labeled for screen access software, Mr. Meyer could not submit required information.

19. The information needed to create and maintain accessible digital websites, including online forms, has long been readily available to Defendants. The World Wide Web Consortium issued the Web Content Accessibility Guidelines (2.0 AA) ("WCAG 2.0 AA"), which explain how to make web content and processes accessible, in 2008. The United States Access Board's Section 508 Standards were updated to incorporate WCAG 2.0 AA in 2017.

20. Because Mr. Meyer could not independently reapply for Medicaid benefits, he had to obtain sighted assistance.

21. On or about April 10, 2018, Mr. Meyer wrote to DFR, informing the division once again that he is blind and cannot read print notices. Mr. Meyer requested Braille communications and expressly stated that he wanted such communications so as not to miss important deadlines regarding the benefits eligibility redetermination process. He asked DFR to respond to his request within 10 days. DFR never responded to Mr. Meyer's letter.

22. As a result of DFR's failure to provide Mr. Meyer with notices and communications in Braille, he missed the deadline to submit documents to verify his eligibility to receive benefits.

23. On or about May 1, 2018, Mr. Meyer called DFR to lodge a complaint about the lack of accessible communications and DFR's failure to provide him with communications in

Braille. During the call, Mr. Meyer requested an extension of the deadline to submit documentation regarding his Medicaid eligibility, but the representative declined to provide an extension.

24. On or about May 1, 2018, DFR denied Mr. Meyer's application for HIP and sent him a print letter explaining that the reasons for his denial were his alleged failure to provide all required information and his failure to cooperate in verifying income.

25. On or about May 6, 2018, Mr. Meyer again wrote to DFR requesting Braille communications from DFR and FSSA. He requested a written response from DFR by June 8, 2018, but DFR never responded to Mr. Meyer's letter.

26. On or about June 1, 2018, Mr. Meyer again filed for Medicaid and SNAP benefits, with assistance from a sighted third party. He was conditionally approved for HIP benefits on or about June 13, 2018.

27. At his interview for SNAP benefits on or around June 18, 2018, Mr. Meyer again requested Braille notifications from Defendants.

28. Mr. Meyer appealed DFR's initial denial of HIP benefits and called FSSA on or about June 21, 2018, for a pre-hearing conference. At that time, he requested that all hearing notices be sent to him in Braille. A representative told Mr. Meyer that FSSA did not have the capability to provide documents in Braille, but that perhaps a local office could provide them. When Mr. Meyer called FSSA again on or about June 28, 2018, to reschedule his hearing date, he once again requested that all hearing notices be sent in Braille. This time, the FSSA representative told him that Braille simply could not be provided.

29. Mr. Meyer called FSSA again on or about July 2, 2018, to learn what materials he needed to submit to proceed with his appeal of the denial of HIP benefits. Mr. Meyer also followed

up on his request for Braille documents and a representative told him that a supervisor was aware of his request, but that FSSA could not provide documents in Braille, nor could it confirm in writing that it was unable to provide Braille documents.  No local office of FSSA ever provided Mr. Meyer with Braille documents.

30. On or about July 17, 2018, an FSSA administrative judge heard Mr. Meyer's appeal of the initial denial of HIP benefits. The administrative judge told Mr. Meyer that his request for Braille communications could not be included as part of his case regarding benefits eligibility.

31. In or around August 2018, FSSA fully approved Mr. Meyer for HIP benefits.

32. On or about November 9, 2018, Plaintiffs' counsel wrote to Secretary Walthall and Director Shields, on behalf of Mr. Meyer and the NFB, informing them of Mr. Meyer's unsuccessful attempts to obtain Braille documents and the accessibility barriers on FSSA's website.  Counsel for Mr. Meyer offered to work collaboratively with Defendants to resolve these issues and provide accessible formats and websites to blind individuals.

33. Director Shields responded to Plaintiffs' letter by stating that DFR would provide all future print correspondence to Mr. Meyer in Braille, and that DFR's assessment of its website did not reveal any accessibility issues. DFR did not address how it would provide other blind individuals accessible formats or publicize their availability.  In response, Plaintiffs' counsel again wrote to Director Shields, pointing out the deficiencies in DFR's response and renewing their offer to work collaboratively with DFR to implement a comprehensive solution to its accessibility issues. Director Shields again declined Plaintiffs' invitation.

34. Despite these repeated requests for accessible communications, FSSA and DFR have yet to provide Mr. Meyer any documents in Braille or another accessible format.

35. To the contrary, in or around March and April 2019, one of Defendants' health insurance contractors sent Mr. Meyer letters, including a notice that his request for coverage of certain medication was being denied, in standard print, not Braille.

36. Mr. Meyer wants to review information related to his benefits privately and independently. He could do so if Defendants provided these critical written communications in Braille. He is concerned that if Defendants continue to communicate with him exclusively through print documents, he will once again miss critical deadlines and requests for additional information and risk being disenrolled from benefits.

**Plaintiff Sarah Meyer**

37. Ms. Meyer resides in Muncie, Indiana. She has received health coverage benefits through Indiana's Medicaid program for more than a decade. She relies on these benefits to obtain and pay for necessary medical care.

38. In or about 2010, Ms. Meyer was removed from Indiana's Medicaid program after she failed to submit the required paperwork to prove her eligibility for benefits. Ms. Meyer was unable to read the standard print notices that DFR had mailed to her home, which instructed her to submit the paperwork. Ms. Meyer had not learned of the notices until after she disenrolled from the Medicaid plan.

39. In or around May 2019, after reviewing her mail with the assistance of a sighted friend, Ms. Meyer learned that Defendants had again sent her print correspondence informing her that she was once again at risk of losing her Medicaid benefits, and that to maintain her benefits, she was required to submit paperwork to FSSA to confirm her residency.

40. On or about May 13, 2019, several months after Mr. Meyer and the NFB wrote to DFR and FSSA informing them of the problem of inaccessible communications, Ms. Meyer called

a regional FSSA office, confirmed her residency in Indiana, and requested that FSSA provide all future communications in Braille or electronic format—formats that allow her to privately and independently access her benefits information.  The representative with whom Ms. Meyer spoke told her that someone would follow up with her regarding her request for alternative formats.

41. Approximately two weeks later, having not heard back from the regional office, Ms. Meyer called back FSSA on or about May 28, 2019, and repeated her request for communications in Braille or electronic format.  A representative told her that someone would get back to her within 24 hours.

42. The next day, a representative returned Ms. Meyers' call and informed her that FSSA was unable to produce communications and notices in Braille or electronic format, but that Ms. Meyer could authorize a sighted representative to receive copies of all her FSSA communications and notices and read the documents to her.  The representative directed Ms. Meyer to the National Federation of the Blind of Indiana and Indiana Blind and Visually Impaired Services for further assistance.

43. Even after agreeing to produce Braille documents to Mr. Meyer, and having been put on notice that Ms. Meyer is also blind, FSSA and DFR never provided Ms. Meyer any documents in alternative formats, and Ms. Meyer continues to receive communications and notices related to her Medicaid coverage in standard print.   She is concerned that she could again miss critical Medicaid deadlines if she continues to receive communications from Defendants solely in standard print.  Ms. Meyer wants to review information related to her benefits privately and independently. She could do so if Defendants provided these critical written communications in Braille or electronic formats.

**Plaintiff NFB**

44. The National Federation of the Blind has been and continues to be harmed by Defendants' discriminatory actions, as set forth herein, in two ways.

45. First, because the ultimate purpose of the NFB is the complete integration of the blind into society on a basis of equality, Defendants' discriminatory treatment of blind individuals who receive government benefits frustrates the NFB's organizational mission. Defendants' use of inaccessible communications has required the NFB to divert its resources to address Indiana's discriminatory practices that otherwise could have been directed to other programs and activities. Indeed, before filing this lawsuit, the NFB devoted resources to offering to work collaboratively with Defendants to remedy the problems outlined in this Complaint. The NFB, through counsel, wrote to Secretary Walthall and Director Shields to inform them of their failure to communicate with blind individuals in a manner that is equally effective as Defendants' communications with all other individuals, and to offer the NFB's experience working with large governmental agencies to implement comprehensive accessible format plans. In spite of those efforts, Defendants have continued to provide Plaintiffs Christopher Meyer and Sarah Meyer, and other blind individuals, with inaccessible print communications, and accessibility barriers on Defendants' websites persist.

46. Second, the NFB is a membership organization and has many blind members, including Christopher Meyer and Sarah Meyer, as well as Kaiti Shelton, who receive government benefits from Indiana and wish to review information related to their benefits privately and independently.

47. Kaiti Shelton resides in Muncie, Indiana and has experienced discriminatory conduct by Defendants similar to that faced by Mr. Meyer and Ms. Meyer. Ms. Shelton is blind and uses Braille and accessible electronic formats to make and receive written communications.

She also uses magnification and screen access software, such as JAWS and NonVisual Desktop Access, to read written communications.

48. Ms. Shelton began receiving Medicaid benefits from the State of Indiana in or around September 2018 after moving from Ohio. All communications from Defendants concerning Ms. Shelton's eligibility and enrollment for Medicaid benefits have been in standard print, a format she cannot independently access.

49. To read Defendants' print communications, Ms. Shelton has relied on sighted assistance from her parents or Aira, a paid service that connects blind individuals with sighted agents who read written communications from a camera on the individual's mobile device or mounted in eyeglasses worn by the blind individual.

50. While Ms. Shelton has accessed Defendants' written communications with assistance from her parents and Aira, she has sacrificed her privacy and independence to do so, and, in the case of Aira, has had to pay for this assistance.

51. In or around April 2019, Ms. Shelton called FSSA to request that she receive all written communications in Braille or electronic format. She was told by an FSSA representative that a supervisor would return her call and speak with her directly about her request. The representative also provided Ms. Shelton with a phone number with a 202 area code and told her to call the number for assistance with receiving accessible communications. Ms. Shelton called the phone number, but no one ever answered.

52. Ms. Shelton called FSSA a second time to request accessible communications, but the FSSA representative told her that the agency could not provide her any documents in Braille.

53. Each time Ms. Shelton called FSSA, she lodged a complaint regarding FSSA's provision of inaccessible print communications. No one ever called Ms. Shelton to follow up or resolve her complaints.

54. Ms. Shelton never received a call from any FSSA supervisor, and despite her efforts, she has yet to receive any accessible communications from Defendants.

## COUNT ONE - VIOLATION OF TITLE II OF THE ADA

55. Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

56. Mr. Meyer, Ms. Meyer, and other NFB members are qualified individuals with a disability protected by the ADA, *see* 42 U.S.C. §§ 12102, 12131(2); they are persons with disabilities within the meaning of the ADA in that they have impairments that substantially limit the major life activity of seeing.

57. FSSA and DFR, as agencies, divisions, or instrumentalities of the State of Indiana, are public entities subject to Title II of the ADA.

58. Title II of the ADA guarantees qualified individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132. The ADA specifically requires public entities to offer communications with individuals with disabilities that are as effective as communications with others, and to provide auxiliary aids and services where necessary to afford individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. 28 C.F.R. § 35.160. For the communications to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. *Id.* Public entities must give primary

consideration to the requests of individuals with disabilities when considering what types of auxiliary aids and services are necessary. *Id.* Public entities must also make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)(i).

59. Defendants' provision and administration of benefits, such as health care coverage, directly and through its contractors, constitutes a service, program, or activity subject to Title II of the ADA.

60. In failing to provide blind individuals like Mr. Meyer, Ms. Meyer, and other NFB members communications in accessible formats, such as Braille and electronic formats, and by failing to remove accessibility barriers from their websites, Defendants have refused to provide the auxiliary aids and services necessary to communicate with blind individuals in an equally effective and timely manner that protects their privacy and independence. This deprives Mr. Meyer, Ms. Meyer, and other NFB members an equal opportunity to benefit from Defendants' services, programs, and activities. Defendants' failure to comply with the ADA is ongoing.

61. Because Mr. Meyer, Ms. Meyer, and other NFB members cannot independently access standard print or portions of Defendants' websites, they must either find and rely on third-party assistance, which intrudes upon the privacy of their personal information, or forego accessing their benefits information altogether. Defendants' failure to communicate effectively with blind individuals puts them at risk of denial or interruption of critical benefits.

62. Accessible formats such as Braille and large print are auxiliary aids and services under the Title II regulations. 28 C.F.R. § 35.104. Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

63. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' benefits programs, services, or activities. If there is no change in the status quo, Mr. Meyer, Ms. Meyer, and other NFB members will be denied their right to access and engage fully in the provision of their social service and health benefits.

64. Defendants' failure to meet their obligations to communicate with blind persons in an equally effective manner constitutes an ongoing and continuous violation of the ADA and its implementing regulations. Unless restrained from doing so, Defendants will continue to violate the ADA. Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

65. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

66. Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## COUNT TWO - VIOLATION OF REHABILITATION ACT

67. The allegations contained in the previous paragraphs are incorporated by reference.

68. Mr. Meyer, Ms. Meyer, and other NFB members are qualified individuals with a disability protected by Section 504 of the Rehabilitation Act. *See* 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

69. FSSA and DFR receive federal financial assistance and are therefore covered by the Rehabilitation Act.

70. The Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As part of that accessibility mandate, the Rehabilitation Act requires that recipients of federal financial assistance shall ensure that communications with their applicants, employees, and beneficiaries are effectively conveyed to those having impaired vision and hearing. 28 C.F.R. § 42.503.

71. Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); *see* 45 C.F.R. § 84.52(a)(2)-(3).

72. Section 504 requires recipients of federal financial assistance that provide health, welfare, or other social services or benefits and that have at least fifteen employees to provide auxiliary aids and services, such as written notices and other documents in Braille, to individuals who are blind. 45 C.F.R. § 84.52(b), (d).

73. A recipient of federal financial assistance may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

74. Defendants' provision and administration of benefits, such as health care coverage, constitutes a program or activity receiving federal financial assistance and must therefore comply with Section 504 of the Rehabilitation Act.

75. Defendants have failed and are failing to meet their obligation to provide blind individuals an equal opportunity to use and benefit from their public assistance programs and

activities.  In failing to provide blind individuals like Mr. Meyer, Ms. Meyer, and other NFB members with accessible print and website communications, Defendants and their contractors have refused to provide the auxiliary aids and services necessary to communicate with blind individuals in an equally effective and timely manner that protects their privacy and independence.

76. Because Mr. Meyer, Ms. Meyer, and other NFB members cannot independently access standard print or portions of Defendants' websites, they must either find and rely on third-party assistance, which intrudes upon the privacy of their personal information, or forego accessing their benefits information altogether.  Defendants' failure to communicate effectively with blind patients puts them at risk of denial or interruption of critical benefits.

77. Accessible formats, such as Braille, constitute auxiliary aids and services under the Section 504 regulations.  45 C.F.R. § 84.52(d)(3).  Numerous governmental agencies and commercial entities already provide individual account and benefits information to blind persons in similar accessible formats.

78. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' benefits programs, services, or activities.  If there is no change in the status quo, Mr. Meyer, Ms. Meyer, and other NFB members will be denied their right to access and engage fully in the provision of their social service and health benefits.

79. Defendants' failure to meet their obligations to communicate with blind individuals in an equally effective manner constitutes an ongoing and continuous violation of Section 504 and its implementing regulations.  Unless restrained from doing so, Defendants will continue to violate

Section 504. Unless enjoined, Defendants' conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

80. Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

A. Declare that Defendants' failure to ensure that they and their contractors offer and provide information and other communications in accessible formats to blind individuals violates Title II of the ADA and Section 504.

B. Declare that Defendants have a duty to provide equally effective access to all information they and their contractors provide to recipients of government benefits, including, but not limited to, notices, correspondence, forms, and publications, in appropriately secure formats that are accessible to blind individuals, including Braille, large print, audio CD, and digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, e-mail, or other requested media, and all website communications;

C. Grant a permanent injunction prohibiting Defendants from violating Title II of the ADA and Section 504, and requiring Defendants, their successors, agents, contractors, assigns, representatives, employees, and all persons acting in concert therewith, to ensure that Plaintiffs have equally effective access to all information Defendants provide to Indiana residents, including, but not limited to: by providing equal access to all print communications in appropriately secure formats that are accessible to blind persons, including Braille, large print, audio CD, and digital navigable formats supported by computers and/or digital talking-book players, transmitted through data CD, flash drive, e-mail, or other requested media; by remediating their websites so that they

provide equally effective communication to the blind; and by implementing policies, procedures, and practices to ensure the consistent and affirmative provision of alternative formats to blind individuals, such that blind individuals need not make multiple requests for accessible formats, and the long-term maintenance of accessible websites;

      D.     Award Plaintiffs' reasonable attorneys' fees and costs, as provided by law; and

      E.     Order such other and further relief as the Court deems just and proper.

Dated: August 6, 2019

*s/ Thomas E. Crishon*
Thomas E. Crishon (No. 28513-49)
Emily A. Munson (No. 29025-49)
INDIANA DISABILITY RIGHTS
4701 North Keystone Avenue, Suite 222
Indianapolis, IN 46205
Telephone: (317) 722-5555
Fax: (317) 722-5564
tcrishon@indianadisabilityrights.org
emunson1@indianadisabilityrights.org

Jessica P. Weber (*pro hac vice pending*)
Chelsea J. Crawford (*pro hac vice pending*)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Telephone: (410) 962-1030
Fax: (410) 385-0869
jweber@browngold.com
ccrawford@browngold.com

Jana Eisinger (*pro hac vice pending*)
LAW OFFICE OF JANA EISINGER, PLLC
4610 South Ulster Street, Suite 150
Denver, CO 80237
Telephone: (303) 209-0266
Fax: (303) 353-0786
jeisinger@eisingerlawfirm.com

*Attorneys for Plaintiffs*