UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MEYER, SARAH MEYER, and THE NATIONAL FEDERATION OF THE BLIND, INC., | ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | No. 1:19-cv-03311-JMS-TAB |
| JENNIFER SULLIVAN, *in her official capacity as Secretary of the Indiana Family and Social Services Administration*, and ADRIENNE SHIELDS, *in her official capacity as Director of the Indiana Division of Family Resources*, | ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**ORDER**

Plaintiffs Christopher Meyer, Sarah Meyer, and The National Federation of the Blind, Inc. ("NFB") assert claims against Jennifer Sullivan, in her official capacity as Secretary of the Indiana Family and Social Services Administration (the "FSSA") and Adrienne Shields in her official capacity as Director of the Indiana Division of Family Resources (the "DFR") for violations of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act. A bench trial in this matter is scheduled for June 14, 2021, and Defendants have filed a Motion to Exclude Expert Testimony at Trial, [Filing No. 79], which is now ripe for the Court's consideration.

**I.**
**STANDARD OF REVIEW**

Federal Rule of Evidence 104 instructs that "[t]he court must decide any preliminary question about whether a witness is qualified…or evidence is admissible." Fed. R. Evid. 104(a). Federal Rule of Evidence 702 provides that expert testimony is admissible if: "(a) the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  A trial judge "must determine at the outset…whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue…. Many factors will bear on the inquiry…." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

The Court has a "gatekeeping obligation" under Rule 702, and "'must engage in a three-step analysis before admitting expert testimony.  It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).  Put another way, the district court must evaluate: "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Gopalratnam*, 877 F.3d at 779 (emphasis omitted).  The Seventh Circuit Court of Appeals "give[s] the district court wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

## II.
### BACKGROUND

Plaintiffs Christopher and Sarah Meyer are brother and sister. Mr. Meyer was born with Leber's congenital amaurosis, a condition present at birth that causes significant vision loss and blindness, and he is blind as a result. [Filing No. 66-3 at 7.] He reads braille and uses a variety of assistive technology to read standard alphanumeric print. [Filing No. 66-3 at 7-8.] To read hardcopy alphanumeric print documents, he uses applications that turn text into an audio output, or he uses human readers – referred to as sighted assistance – to read documents to him. [Filing No. 66-3 at 8-9.] To navigate websites, Mr. Meyer uses "screen readers," which are software programs that read a computer screen and provide an audio output. [Filing No. 66-3 at 11-12.]

Ms. Meyer has also been blind since birth as a result of Leber's congenital amaurosis. [Filing No. 66-4 at 8.] She also reads braille and uses a variety of text-to-audio applications to read hard copy documents. [Filing No. 66-4 at 9; Filing No. 66-4 at 14.] Ms. Meyer also uses screen readers to navigate websites. [Filing No. 66-4 at 12.]

The FSSA is the agency responsible for administering public benefits programs in the State of Indiana. [Filing No. 71-12 at 2.] DFR is a division within the FSSA that determines applicants' eligibility for benefits programs, including Medicaid, Supplemental Nutrition Assistance Program ("SNAP"), and Temporary Assistance for Needy Families ("TANF"), and then administers those programs. [Filing No. 66-14 at 8.] The FSSA and DFR receive federal funds and are therefore subject to Title II of the ADA and Section 504 of the Rehabilitation Act. [Filing No. 66-8 at 5-7.] All websites operated by the FSSA, including the FSSA Homepage and Medicaid Homepage, include a button for a user to utilize a built-in "BrowseAloud" text-to-audio program. [Filing No. 66-19 at 24; Filing No. 66-21 at 36.]

Mr. Meyer and Ms. Meyer receive SNAP and Medicaid benefits through the State of Indiana, and this litigation relates to difficulties they have had applying for and maintaining benefits either through Defendants' print communications or their websites. On March 25, 2021, the Court denied Plaintiffs' Motion for Summary Judgment, denied Defendants' Cross-Motion for Summary Judgment, and found that the following issues remain for trial: (1) whether Plaintiffs' claims are moot because of Defendants' remedial actions; (2) whether Defendants' print communications violate Title II and Section 504; and (3) whether Defendants' websites violate Title II and Section 504. [Filing No. 82.] Defendants have moved to exclude the expert testimony of Terri Youngblood Savage, who conducted an accessibility review of Defendants' websites. [Filing No. 79.]

### III.
### DISCUSSION

Ms. Youngblood Savage is the President of Accessible Systems, Inc., and tested Defendants' websites using the World Wide Web Consortium Web Accessibility Guidelines ("WCAG 2.1"). [Filing No. 74-8 at 2-3.] Her Expert Report "summarizes the testing of the issues found from an accessibility review of [the FSSA and DFR] websites." [Filing No. 71-8 at 4.] Ms. Youngblood Savage summarized the methodology used to test the websites as follows:

> The websites were evaluated against the [WCAG 2.1]  WCAG is a set of requirements that is the international system of coding standards.  WCAG compliance ensures that your website is accessible by everyone, irrespective of disabilities and age.
>
> The evaluation was completed by using a combination of methods to evaluate accessibility.  Testing included direct code inspection and helper tools (such as special browser add-ons) to locate issues, [and] look for other issues that manual testing did not detect.  For example, only a human evaluator can determine if the alternative text for an image is a meaningful equivalent of that image.  Another manual method we will use is screen reader and other assistive technology evaluation.  We used a screen reader called JAWS and NVDA to read the websites.  To evaluate keyboard accessibility and focus handling we use the keyboard to

>navigate the websites.  The reviews below were conducted on publicly available websites.

[Filing No. 71-8 at 8.]

>As for the BrowseAloud feature, Ms. Youngblood Savage opined the following:

>At the very bottom of the home page there is a toolbar for accessibility that features "Browse Aloud" and a text-only version of the website.  Browse [A]loud is an accessibility tool that reads the page to a user.  It is a nice feature but does not replace accessibility programming of the website.  Many requirements for accessibility have not been addressed by using this tool, [and] people who are blind would not have full access to the website the way they would if it followed guidelines for accessibility.

[Filing No. 71-8 at 10.]  Ms. Youngblood Savage concluded:

>It is my opinion, to a reasonable degree of professional certainty, that: 1) The websites evaluated in this report are not fully accessible to people who are blind; and 2) there are barriers for people who are blind that prevent them from accessing services and information on the websites.

[Filing No. 71-8 at 37.]

In support of their Motion to Exclude, Defendants argue that Ms. Youngblood Savage did not perform testing on BrowseAloud, and therefore cannot testify as to whether Defendants' websites are accessible.  [Filing No. 79 at 4.]  They assert that Ms. Youngblood Savage "claims to have researched…data on Defendants' websites to assert that the websites are not Accessible, when she never tested the Accessibility tool on Defendants' websites," and "has not completed the scientific analysis that would be necessary for [her] conclusory opinion."  [Filing No. 79 at 5.] Defendants also argue that because Ms. Youngblood Savage never tested BrowseAloud, her testimony is not reliable or helpful.  [Filing No. 79 at 5.]  They assert that "[i]f Ms. [Youngblood] Savage did not test the Defendants' websites for Accessibility using the software designed to make the websites Accessible, then her evidence was insufficient, and therefore not helpful to this

5

Court." [Filing No. 79 at 6.] Finally, Defendants contend that Ms. Youngblood Savage's "assumptions do not fit with the facts in this case." [Filing No. 79 at 6-7.]

In their response, Plaintiffs argue that Ms. Youngblood Savage used a reliable methodology by following the guidelines provided in WCAG 2.1, "using a combination of five manual and assistive tools: (1) the Web Accessibility Toolbar; (2) Job Access With Speech ('JAWS'); (3) Non-Visual Desktop Access ('NVDA'); (4) The Color Contrast Analyzer; and (5) JavaScript Bookmarklets for Accessibility Testing." [Filing No. 80 at 5.] Plaintiffs note that Ms. Youngblood Savage also used "direct code inspection" and evaluations, relied on JAWS and NVDA to "read the websites," used a keyboard for navigation to evaluation accessibility and "focus handling," and evaluated the pages and tools available on each of the websites. [Filing No. 80 at 5.] As for BrowseAloud, Plaintiffs argue that Ms. Youngblood Savage considered it and "ultimately concluded that its limited features were incompatible with the full accessibility requirements in the WCAG2.1 standards." [Filing No. 80 at 6.] Plaintiffs assert that Defendants' argument – that Ms. Youngblood Savage should have more thoroughly analyzed accessibility using BrowseAloud – goes to the weight of Ms. Youngblood Savage's testimony, and not to whether her opinions are admissible. [Filing No. 80 at 6.] Plaintiffs argue further that Ms. Youngblood Savage's opinions are based on sufficient data, and that she "did not ignore BrowseAloud or turn a blind eye to the fact that it is available on Defendants' websites." [Filing No. 80 at 7-8.] Plaintiffs also contend that Ms. Youngblood Savage's "specialized knowledge of web accessibility will assist the trier of fact to determine whether Defendants' websites contain accessibility barriers – a key issue in this case." [Filing No. 80 at 9.]

In their reply, Defendants argue that although Plaintiffs state that Ms. Youngblood Savage's testimony is to assist the Court in determining whether Defendants' websites are accessible, "there

6

is no possible instance in which [she] can articulate [this] as she never tested the Accessibility software that is provided on Defendants' websites." [Filing No. 81 at 1-2.] They contend that Ms. Youngblood Savage did not cite any scientific discipline to support her conclusion that BrowseAloud does not satisfy WCAG 2.1 standards, and reiterate their argument that her testimony will not aid the Court. [Filing No. 81 at 4-7.] Defendants argue further that the issues with Ms. Youngblood Savage's testimony cannot be dealt with on cross-examination because the concern with her testimony "is not questioning one simple input, but indeed her entire methodology in not testing the actual Accessibility software provided to form her conclusions." [Filing No. 81 at 7.]

### A. Whether Ms. Youngblood Savage is Qualified

Fed. R. Evid. 702 allows the opinions of witnesses who have the requisite "knowledge, skill, experience, training, or education." Defendants do not challenge Ms. Youngblood Savage's qualifications, and the Court finds that she is qualified to testify as an expert on the accessibility of Defendants' websites. Ms. Youngblood Savage is the President and Owner of Accessible Systems, Inc., a company that provides consulting services for information systems and accessibility support, including the development of accessible websites and accessibility testing and evaluation. [Filing No. 66-26 at 2.] She is a member of the International Association of Accessibility Professionals, and has provided accessibility consulting to numerous public and private entities since 1991. [Filing No. 66-26 at 7-11.] Her background and extensive experience make her qualified to testify as an expert regarding the accessibility of Defendants' websites.

### B. Whether Ms. Youngblood Savage's Methodology is Scientifically Reliable

The Supreme Court in *Daubert* set forth four factors a court may consider when determining whether an expert witness's methodology is reliable, including: (1) whether the

7

methodology "can be (and has been) tested"; (2) whether the methodology "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; and (4) whether the methodology is generally accepted. *Daubert*, 509 U.S. at 593-94. These factors are not a "definitive checklist or test," *id.* at 593, and the weight of the factors is dependent on "the particular circumstances of the particular case at issue," *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 150 (1999). The key focus "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Defendants' qualm with Ms. Youngblood Savage's methodology centers on her failure to perform testing on BrowseAloud. Ms. Youngblood Savage readily admits that she did not test BrowseAloud, but she explains why that is the case in her Expert Report, stating:

> At the very bottom of the home page there is a toolbar for accessibility that features "Browse Aloud" and a text-only version of the website. Browse [A]loud is an accessibility tool that reads the page to a user. It is a nice feature but does not replace accessibility programming of the website. Many requirements for accessibility have not been addressed by using this tool, people who are blind would not have full access to the website the way they would if it followed guidelines for accessibility.
>
> The text only view makes it very easy for a blind user to find content. Text only is not a widely accepted alternative for accessibility. Each time you find something and switch pages the user must convert to text only again. One of the myths of web accessibility is that people with disabilities benefit from text-only versions.

[Filing No. 66-26 at 22.] She also testified as follows:

> Q: How can you determine that if you've never even went through BrowseAloud?
>
> A: Well, BrowseAloud is reading text only on a website. It does not provide the other accessibility necessities that people who are blind need.

[Filing No. 71-9 at 4.]

The Court finds that the fact that Ms. Youngblood Savage did not test BrowseAloud in connection with Defendants' websites does not make her methodology unreliable such that her testimony should be prohibited. She explained that she was aware of the accessibility of BrowseAloud on Defendants' websites, but discounted its usefulness based on its features because it simply reads text to blind users and still would not give blind users full access to Defendants' websites. Ms. Youngblood Savage also noted that the text-only view – the view for which BrowseAloud is used – does not make a website accessible because a user must convert content to text-only each time they find something and switch pages. Ms. Youngblood Savage's conclusions regarding the effect that BrowseAloud has on accessibility were reached using reliable methodology. Defendants are free to address any shortcomings they believe exist in Ms. Youngblood Savage's methodology during cross-examination. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); *see also Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination").

### C. Whether Ms. Youngblood Savage's Testimony Will Aid the Trier of Fact

Defendants also characterize Ms. Youngblood Savage's failure to test the BrowseAloud feature on Defendants' websites as rendering her opinion unhelpful to the trier of fact – in this case, the Court at the upcoming bench trial. An expert "must testify to something more than what is obvious to the layperson." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (quotation and citation omitted). The Court does not have extensive and specialized knowledge regarding the website accessibility issues that will be key to resolving this lawsuit. It finds that

Ms. Youngblood Savage's expert testimony – including her explanation for why she found that BrowseAloud did not enhance the accessibility of Defendants' websites – will be helpful at trial. Again, Defendants will have ample opportunity to cross-examine Ms. Youngblood Savage regarding BrowseAloud and all of her opinions.

In sum, while Ms. Youngblood Savage did not test BrowseAloud, she explained her opinion that it did not render Defendants' websites accessible.  She is qualified to testify regarding accessibility, her methodology is sound, and her testimony will aid the trier of fact.  Defendants' Motion to Exclude Expert Testimony at Trial, [Filing No. 79], is **DENIED**.

## IV.
### CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude Expert Testimony at Trial, [79], is **DENIED**.  Ms. Youngblood Savage's testimony and expert report will be admissible at trial.

Date: 5/13/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**